**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBRA R. SALAZAR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case No. CIV-07-912-L |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Debra R. Salazar, seeks judicial review of a denial of disability insurance benefits and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and the cause remanded for further administrative proceedings.

**I.   Agency Proceedings**

This is Ms. Salazar's second time to seek judicial review of an unfavorable decision of the Commissioner. Ms. Salazar filed applications for disability insurance benefits and SSI on April 15, 2002, with a protective filing date of March 6, 2002.[1] Ms. Salazar alleged a disability onset date of February 20, 2002. AR 53-56, 156-158. After Ms. Salazar's applications were denied initially and on reconsideration, the first administrative hearing in this matter was held on August 25, 2003, before Administrative Law Judge (ALJ) Howard

---

[1] Ms. Salazar was insured for disability benefits through June 30, 2006. AR 13.

O'Brien. AR 165-190. Following this hearing, ALJ O'Brien issued an unfavorable decision on October 8, 2003. AR 12-21. The ALJ applied the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. He determined that Ms. Salazar's impairments -- congenital imperforate anus, depression and post traumatic stress disorder -- are severe impairments, but he further determined at step four that Ms. Salazar could return to her past relevant work as a clerk. AR 15, 17, 19-20. The Appeals Council denied Ms. Salazar's request for review, AR 4-7, making the decision of the ALJ the final decision of the Commissioner.

Ms. Salazar then sought judicial review of the Commissioner's decision before this Court. On June 28, 2005, the assigned Magistrate Judge entered a Report and Recommendation recommending the matter be reversed and remanded for further administrative proceedings. AR 214-224. Specifically, the ALJ was directed, on remand, to properly evaluate Ms. Salazar's complaints of worsening fecal incontinence, an alleged symptom of her imperforate anus. AR 223. Judgment was entered accordingly. AR 211. On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the matter for further administrative proceedings in accordance with the Court's order. AR 227.

On July 25, 2006, a second administrative hearing regarding Ms. Salazar's disability applications was held before ALJ Lance Hiltbrand. AR 322-353. ALJ Hiltbrand issued an unfavorable decision on March 30, 2007. AR 202-209. The Appeals Council denied Ms.

Salazar's request for review, AR 191-193, making the decision of the ALJ the final decision of the Commissioner.

## II.     The ALJ's Decision

The ALJ, applying the five-step sequential evaluation process, first determined that Ms. Salazar had not engaged in substantial gainful activity since February 20, 2002, the alleged onset date. AR 204. At step two, the ALJ determined that Ms. Salazar suffers from the following medically determinable impairments: history of imperforate anus with surgical repair and affective disorder. AR 204. The ALJ further determined that these impairments, either singularly or in combination, were not severe. AR 204-205. Accordingly, the ALJ denied benefits at step two, finding Ms. Salazar not disabled.

## III.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own

judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## IV.     Issues Raised on Appeal

Ms. Salazar claims that the ALJ erred in his assessment of her symptoms and functional limitations when finding her physical and mental impairments were not severe at step two of the sequential evaluation process. Ms. Salazar claims the ALJ's credibility analysis is not supported by substantial evidence. In addition, Ms. Salazar claims the ALJ failed to properly consider the opinion of the State agency medical consultant regarding her mental impairments.

## V.     Analysis

At step two of the sequential evaluation process the claimant bears the burden to demonstrate an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are the "abilities and aptitudes necessary to do most jobs," and include the ability to understand, carry out and remember simple instructions, and the ability to respond appropriately to usual work situations. 20 C.F.R. §§ 404.1521(b); 416.923(b).

The step-two showing is a *de minimis* showing that considers only the claimant's impairments and evaluates "the impact the impairment would have on [her] ability to do work." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). *See also* Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 ("The evaluation of whether an impairment(s) is 'severe' that is done at step 2 of the applicable sequential evaluation process . . . requires an assessment of the

functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities . . . ."). "A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, *i.e.*, do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities." Soc. Sec. Rul. 85-28, 1985 WL 56856 at *3. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." *Id*.

### A.     Ms. Salazar's Physical Impairments

The ALJ found Ms. Salazar has a medically determinable impairment due to a history of imperforate anus with surgical repair, but determined this impairment is not severe. In support of this determination, the ALJ found the medical records did not substantiate Ms. Salazar's subjective complaints regarding fecal incontinence, a symptom of the imperforate anus, and that her testimony was not credible because she did not seek medical attention for her condition. In addition, the ALJ relied on the fact that Ms. Salazar is a convicted felon as grounds for discounting her credibility. *See* AR 207.

The record shows that at the time of the second hearing before ALJ Hiltbrand, on remand from the Appeals Council, Ms. Salazar was incarcerated and in the custody of the Oklahoma Department of Corrections (ODOC). Prior to her incarceration, medical records were scant and contained little to no reference to her imperforate anus and fecal incontinence. As to the medical records from this time period, the ALJ made the following observations:

> The records submitted for the period of time from August 2000 to May 2002 simply do not substantiate her complaints of increased fecal incontinence. In fact, there are no references to fecal incontinence contained in the treatment records contained in Exhibit B1F [AR 105-111]. The claimant has remarkably few medical records documenting her medical conditions and the purported symptoms associated therewith.

AR 207. Indeed, on judicial review of the prior decision, this Court noted the scant medical evidence and stated that on remand, the "Commissioner will have the opportunity to consider whether a consultative physical examination of Plaintiff would provide the adjudicator with medical evidence necessary to reach an informed determination." AR 223.

As Ms. Salazar's attorney explained at the first hearing, the lack of medical records pertaining to the symptoms of her imperforate anus is attributable to the fact that no medical treatment is available for her condition, the condition is one she has lived with her entire life and Ms. Salazar could not afford treatment. AR 168.[2] *See also* AR 171-172. Nonetheless, a consultative examination would provide evidence of the relationship between the imperforate anus and Ms. Salazar's subjective complaints that she suffers from fecal

---

[2]Ms. Salazar's attorney stated as follows:

> I think she is disabled with the depression but her main problem is not documented because they didn't send her to a proctologist and she has no money for treatment. She was born without an anus and has had no sphincter muscles her whole life and as a result has never been able to hold her bowel movement. And as she's gotten older of course, the problem has gotten worse and because she's had no treatment and there's really nothing they can do for her because that's all there is, we don't have anything about her anal problem objectively other than what the doctors you know have told. . . . . So if you don't find she's disabled with the depression, I would hope that you would consider sending her to a proctologist for a physical.

AR 168.

6

incontinence and that, with age, the frequency of fecal incontinence has increased.[3] Although the ALJ discussed at the hearing the potential need for a consultative examination, AR 325, 327-328, 329, the record shows the ALJ never requested the examination. To some degree, the ALJ discouraged a consultative examination noting the purported difficulty with obtaining one due to Ms. Salazar's incarceration. AR 327-328, 350.

Instead of obtaining a consultative examination, the ALJ relied primarily on records from the Oklahoma Department of Corrections (ODOC) addressing Ms. Salazar's medical treatment during her period of incarceration.[4] These records post-date the first ALJ's decision. ALJ Hiltbrand made the following finding regarding Ms. Salazar's physical impairments based on the ODOC records: "There are a few references to rectal pain and trouble controlling bowels but the claimant has not received any particular treatment to

---

[3]As observed by the magistrate judge on judicial review of the first decision of the Commissioner finding Ms. Salazar not disabled:

> Medical literature suggests that lifelong incontinence is possible following surgery to correct an imperforate anus. 'Surgical reconstruction of the anus is required . . . . The outcome is usually good with treatment, depending on the exact anatomy of the birth defect. Some affected infants may never develop adequate bowel control, depending on the location of the defect.'

AR 222, Report and Recommendation at 9, footnote 2 (*citing* http://www.nlm.nih.gov/medlineplus/ency/article/001147.htm).

[4]According to the record, Ms. Salazar was convicted in August 2003. AR 335. It appears she was projected to be discharged in June 2007, just three months after the ALJ issued his decision. *See* AR 197. Ms. Salazar would not be entitled to benefits during the period of her incarceration. 42 U.S.C. § 402(x). On remand, if a favorable disability determination is made, the Commissioner should address the effect of Ms. Salazar's incarceration on her right to receive benefits. That issue, however, is not presently before this Court.

address these brief complaints." AR 206.  Because the ALJ found the imperforate anus to be a medically determinable physical impairment, he was then required to address the degree to which her fecal incontinence, a symptom of the imperforate anus, limited her ability to do basic work activities by making a finding as to the credibility of Ms. Salazar's statements. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at * 3.

Ms. Salazar testified that she was born with an imperforate anus.  She had corrective surgery performed when she was two weeks of age. She has no control over her bowels and no sensation of a bowel movement.  This condition has affected her ability to work.  AR 340, 348.  *See also* AR 76.  She has frequent accidents which require her to spend time changing her clothes and cleaning herself.  AR 338-340, 348.  *See also* AR 169-171.

In addition to the testimony before the ALJ, Ms. Salazar made statements to the consultative psychologist, Dr. Danaher, as reflected in the psychologist's record:

> When describing her thoughts about physical functioning and the anomalies related to the formation of her genitals she stated, "I feel like a freak. They had to create an anus for me and I have no control over my bowel functioning."  The patient stated that due to her lack of control over bowel functioning she finds it necessary to wear diapers and she has done this for many years. . . . She stated that these problems with loss of control over bowel functioning cause her significant limitations in her activities.

AR 113.  Dr. Danaher stated that "[n]o evidence of exaggeration or malingering was noted" during the course of his examination of Ms. Salazar.  AR 116.

The ALJ rejected Ms. Salazar's testimony as not credible. The ALJ stated:

> The claimant has remarkably few medical records documenting her medical conditions and the purported symptoms associated therewith.  The claimant alleges she has trouble controlling her bowels and that she doesn't always

8

> know when her bowels will move yet she apparently failed to discuss these concerns with her physician. It was not until her incarceration that she mentioned these concerns to the medical staff provided by the Department of Corrections. . . . The claimant's lack of medical attention or request for medical attention prior to incarceration reflects poorly on the veracity of her allegations. The claimant's criminal conviction reflects poorly on her credibility.

AR 207. The ALJ's conclusions regarding the functional limitations Ms. Salazar faces associated with her fecal incontinence are not supported by substantial evidence.

Contrary to the ALJ's findings, the ODOC medical records demonstrate a consistent effort to address Ms. Salazar's fecal incontinence. In March 2005, the ODOC intake history lists incontinence as a present medical problem. AR 266. During that same month, Ms. Salazar reported constipation and was referred to a medical doctor to discuss whether any treatment was available for her imperforate anus. AR 261. In addition, the record reflects that due to her medical condition, Ms. Salazar needed to be placed at a different correctional facility. AR 261. The ODOC Medical Transfer Summary identifies "imperforate anus" as a "Current Acute Condition / Problem." AR 263.

Once transferred, Ms. Salazar submitted requests for medical services. In one request, she reported that she had no control over her bowels and needed "easier access to the toilet." AR 279. In another request, she reported that she had no control over her bowels and that getting on and off the top bunk was hurting her rectum. She requested that she be moved to a bottom bunk. AR 278. According to Ms. Salazar's testimony before the ALJ, she was assigned to a single cell in response to her problems with fecal incontinence. AR 347.

Medical records during this time reflect that Ms. Salazar reported having no control over her bowels and that she was "very concerned" about this problem. AR 250, 260.

Thereafter, Ms. Salazar's medical records from the ODOC continued to reference her imperforate anus. In April 2006, she experienced rectal pain and was given a rectal examination. AR 241, 243. The doctor observed a small opening just below the vaginal site with no rectal muscles appreciated and a very small pencil size opening noted. AR 243. This examination provides medical evidence of her imperforate anus. *See* AR 207 (ALJ stating: "The claimant has failed to present . . . documentary evidence of the surgical procedure necessitates by imperforate anus; however, medical records maintained by the Department of Corrections contain notes of physical exam consistent with such history.").[5]

Based on his review of the medical evidence, the ALJ concluded that "[t]he claimant has not experienced health conditions secondary to her physical abnormality." AR 207. This conclusion is not supported by substantial evidence. The ALJ erroneously equates a failure to receive treatment with an absence of "health conditions." The ALJ does not identify any treatment available to Ms. Salazar and ignores references in the record to the fact that no treatment is available. The ALJ reached this conclusion without obtaining a consultative exam or medical expert testimony to adequately develop the record with respect to this

---

[5]As noted, Ms. Salazar was born with an imperforate anus and corrective surgery was performed when she was two weeks of age. AR 326. It is not surprising, therefore, that she was unable to present documentary evidence of this surgery. At the hearing before the ALJ, Ms. Salazar testified that she underwent corrective surgery as an adult, sometime during her early thirties. AR 327. She lived in Texas at that time. *Id.* Ms. Salazar did not have these medical records, though her attorney unsuccessfully attempted to obtain the records. AR 198. At the time of the hearing, Ms. Salazar was 50 years of age. AR 330. Thus, the records would have been nearly 20 years old.

issue.[6] Instead, the ALJ made an unfounded assumption that some treatment is available and concluded that Ms. Salazar's failure to obtain this treatment was grounds for rejecting the credibility of her testimony. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."); *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir.1987) (before relying on a claimant's failure to pursue treatment or take

---

[6]The Social Security regulations address the circumstances in which a consultative examination is required. The pertinent regulation provides in relevant part:

> Situations requiring a consultative examination. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work, or, if you are a child, your functioning, but the current severity of your impairment is not established.

20 C.F.R. § 416.919a(b). Of particular relevance here are subdivisions (1), (2) and (4).

medication as support for rejecting allegations of pain, the ALJ should consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."). The ALJ did not find, nor is there any medical evidence, that further treatment or medication would benefit Ms. Salazar at all.

Moreover, the ALJ failed to discuss other factors pertinent to the credibility determination. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3 (factors the ALJ must consider include: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the symptom; (3) factors that precipitate and aggravate the symptom; (4) the type, dosage, effectiveness and side effects of any medication the individual takes to alleviate the symptom; (5) treatment, other than medication, the individual receives or has received for relief from the symptom; (6) any measures other than treatment the individual uses or has used to relieve the symptom; and (7) any other factors concerning the individual's functional limitations and restrictions due to the symptoms). For example, with respect to Ms. Salazar's daily activities, the record indicates she rarely leaves home because she is afraid of having an accident while she is out. AR 65, 66, 175. Further, the ALJ failed to address Ms. Salazar's inability to afford medical treatment, *see, e.g.,* AR 168, 173, 174, 176, as a reason for the lack of significant medical documentation of her condition outside the treatment provided by the ODOC. *See Thompson v. Sullivan*, 987 F.2d 1482, 1489-1490 (10th Cir. 1993) (inability to pay may provide a justification for a claimant's failure to seek treatment).

The only remaining basis for the ALJ's credibility determination is the fact that Ms. Salazar was incarcerated on a felony conviction for Driving Under the Influence (DUI). The ALJ did not explain why Ms. Salazar's status as a convicted felon renders her testimony about life-long fecal incontinence not credible. *Compare Stewart v. Astrue*, 551 F. Supp.2d 1308, 1320 (N.D. Fla. 2008) (observing that conviction of a felony may be evidence of a lack of credibility but "fact that [claimant] was serving a probationary term for a drug offense would seem to have little bearing upon whether [claimant's] description of his [pain] symptoms should be believed"); *Albidrez v. Astrue*, 504 F. Supp.2d 814, 822 (C.D. Cal. 2007) (opining that only convictions involving moral turpitude should be considered in evaluating a disability claimant's credibility). Even if it were proper for the ALJ to consider Ms. Salazar's felony DUI conviction, that fact standing alone, is not substantial evidence to support the ALJ's credibility analysis. Indeed, at the hearing before the ALJ, Ms. Salazar testified that she serves as a mentor in the prison's drug and alcohol treatment program. AR 347. In response to this testimony, the ALJ told Ms. Salazar that she is "a very impressive person." *Id.* The ALJ's observations seem counter to his finding that her credibility should be discounted due to her felony conviction.

In sum, the ALJ's crediblity finding is not supported by substantial evidence. Consequently, the ALJ's finding at step two of the sequential evaluation process is not supported by substantial evidence. A remand, therefore, is required. On remand the ALJ is reminded that a consultative examination may be necessary to provide medical evidence of Ms. Salazar's symptoms of fecal incontinence as caused by her imperforate anus. In

addition, the consultative examination may be useful for determining whether medical treatment is available for Ms. Salazar's symptoms.

**B.     Ms. Salazar's Mental Impairments**

The ALJ also found at step two of the sequential evaluation process that Ms. Salazar suffered from affective disorder, but that this impairment did not constitute a severe impairment.

A mental status examination conducted on June 24, 2002, by Dr. Robert Danaher, shows a diagnosis of Major Depressive Disorder, Recurrent, Moderate Severity, in Early Partial Remission, and Post Traumatic Stress Disorder.  AR 116.  Dr. Danaher assigned Ms. Salazar a GAF of 45.[7]

The record shows a history of suicide attempts by Ms. Salazar.  AR 79-80, 108, 112, 146, 260.  In addition, during her period of incarceration, Ms. Salazar was diagnosed with bipolar disorder.  AR 242, 254, 255.  She has been prescribed psychotropic medications as well as medications for her depression.  AR 105, 108, 115, 242, 244, 253, 255, 258, 260, 263, 295, 298, 307-310.

---

[7]A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) (*citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV) at 32).  A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job."  Id. [at 34]." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (*citing* DSM-IV at 34).

On July 8, 2002, Dr. Margaret McKinney completed a Psychiatric Review Technique form. AR 118-133. She opined that Ms. Salazar suffers from affective disorder. She further opined that Ms. Salazar has mild restrictions of activities of daily living and mild difficulties in maintaining concentration, persistence or pace. AR 128.

One month later in August 2002, Dr. C.M. Kampschaefer completed a Psychiatric Review Technique form. AR 134-147. Dr. Kampschaefer opined that Ms. Salazar suffers from Affective Disorders, Anxiety-Related Disorders and Substance Addiction Disorders. AR 134. Dr. Kampschaefer opined that Ms. Salazar has moderate restrictions of activities of daily living and moderate difficulties in maintaining social functioning. AR 144.

Dr. Kampschaefer also completed a Mental Residual Functional Capacity Assessment form. AR 148-151. She determined Ms. Salazar was markedly limited in her ability to understand and remember detailed instructions and to carry out detailed instructions. AR 148. She also determined Ms. Salazar was moderately limited in her ability to interact appropriately with the general public. AR 149.

Subsequent to the consultative examinations, Plaintiff was incarcerated. Medical records from the ODOC show a diagnostic impression of alcohol dependence and bipolar disorder. AR 254; *see also* AR 264. As noted, the medical records further demonstrate Ms. Salazar was taking psychotropic medications.

The ALJ concurred with the opinion of Dr. McKinney, finding Ms. Salazar has only mild difficulties in maintaining social functioning, maintaining concentration, persistence or pace and no repeated episodes of decompensation. AR 208. The ALJ referenced Dr.

Danaher's report, but did not discuss that report and specifically failed to address the GAF score assigned to Ms. Salazar by Dr. Danaher. As set forth above, that GAF score reflects serious impairment in social, occupational, or school functioning, such as inability to keep a job. In addition, the ALJ failed to even mention Dr. Kampschaefer's opinion or the Mental Residual Functional Capacity Assessment form completed by her. Dr. Kampschaefer's assessment includes restrictions more severe than those found by Dr. McKinney. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Without analysis of the reasons for rejecting Dr. Kampschaefer's opinion, the ALJ's step two finding is flawed.

Even more significant, the record is replete with references to the fact that Ms. Salazar's depression is closely linked to the symptoms she suffers as a result of her imperforate anus. Yet, the ALJ wholly failed to address the *combination* of her impairments when making his finding at step two. *See Langley*, 373 F.3d at 1116 ("At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'") (*quoting* 20 C.F.R. § 404.1523); *see also* see also 20 C.F.R. § 416.923 (parallel regulation for assessing Title XVI claims). Because step two requires such consideration, the ALJ's analysis is flawed.

On remand, the ALJ should address all the evidence concerning the degree of functional limitations caused by Ms. Salazar's affective disorders and state his reasons for

the weight given to the opinions of the consultative examiners. In addition, the ALJ should address the degree to which the combination of Ms. Salazar's physical and mental impairments impact her ability to perform basic work activities.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by November __17th__, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __28th__ day of October, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE